

**ZUCKERMAN SPAEDER LLP**

1800 M STREET, NW   SUITE 1000
WASHINGTON, DC 20036-5807
202.778.1800   202.822.8106 fax   www.zuckerman.com

Amit P. Mehta
(202) 778-1865
amehta@zuckerman.com

January 19, 2010

*Via E-Mail And First-Class Mail*

Michael C. DiLorenzo
Assistant United States Attorney
United States Attorney's Office for the
 District of Columbia
555 5th St., NW
Washington, D.C. 20530

Patrick Murphy
Trial Attorney
Counterespionage Section
United States Department of Justice
1400 New York Ave., NW
Washington, D.C. 20530

      Re:    <u>United States v. Robert Cabelly, CR-09-278 (JDB)</u>

Dear Counsel:

      We write pursuant to Federal Rule of Criminal Procedure 16 to memorialize our understanding of the discovery afforded thus far and to request additional discoverable material (which is in bolded text). Please let us know if our understanding of the information we have received thus far conflicts with yours in any way. I would appreciate a response to this letter before February 5, 2010. We will assume that all representations made in this letter are accurate, unless we hear from you to the contrary.

      1.    <u>Documents/Electronic Discovery</u>

      The government has provided us with the following sets of documents on the dates identified below:

      *October 27, 2009*

        a.    20 CDs containing unclassified evidence, including (i) surveillance videos and photographs, (ii) documents seized from searches of Mr. Cabelly's


**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 2

        home and office on May 7, 2007, and (iii) documents seized from a search of Mr. Jahan's office.

   b.    A reference guide describing the evidentiary materials and their respective classifications.

*December 2, 2009*

   a.    14 CDs containing classified information, including (i) over 11,000 recordings of intercepted calls on Mr. Cabelly's cell, business, and residential telephones, (ii) over 14,000 intercepted emails from Mr. Cabelly's business and personal email accounts, (iii) evidence obtained from the May 7, 2007, searches of Mr. Cabelly's home and office.

   b.    Logs of intercepted telephone calls and emails. The telephone log of intercepted calls contains approximately 4,000 entries of the 11,000 recordings.

   c.    The server seized from Mr. Cabelly's office on May 7, 2007.

*January 4, 2010*

   a.    Documents labeled CI_000001 – CI_00179, consisting primarily of bank and corporate records obtained from the Cook Islands.

   b.    Documents labeled Total_0000001 – Total_0000313, consisting of documents obtained from Total. (We received English translations of these documents on January 14, 2009.)

   c.    Documents labeled BAR_000001 – BAR_000128, consisting of banking records.

   d.    Documents labeled UK_000001 – UK_000070, consisting of banking records.

      **Pursuant to Fed. R. Crim. P. 16(a)(1)(E), we request the following additional documents and objects that we believe are in the possession, custody or control of the government and that are "material" to the preparation of the defense.**

   a.    **All documents relating to the application for, and authorization of, call intercepts on Mr. Cabelly's cell, residential, and business phones. Our request includes, but is**



not limited to: (i) warrants and applications for warrants, whether sought under 18 U.S.C. § 2518 et seq. ("Title III") or 50 U.S.C. § 1801 et seq. ("FISA"), (ii) any court orders obtained under Title III or FISA; (iii) any applications and orders relating to extensions for electronic surveillance; (iv) summaries or transcripts of intercepted calls; and (v) any written procedures, including minimization procedures, governing the government's interception of calls.

      b.     All documents relating to the searches conducted at Mr. Cabelly's place of business and residence on May 7, 2007. Our request includes, but is not limited to: (i) warrants and applications for warrants; (ii) inventories of materials seized as a result of the searches; and (iii) photographs or video of the locations at the times of the searches.

      c.     All documents relating to any and all covert searches of Mr. Cabelly's place of business or residence on or prior to May 7, 2007, whether conducted under 50 U.S.C. § 1822 or any other statute, regulation or administrative rule, including by not limited to: (i) warrant and applications for warrants; (ii) any court orders obtained; (iii) inventories of materials seized *or duplicated* during the covert searches; (iv) any memoranda describing the operation of the covert searches; (v) any photographs or video taken during the covert searches; and (vi) any written procedures, including minimization procedures, governing the covert searches.

      d.     All records from any domestic or foreign banking or investment banking institutions for accounts or credit cards in the name of Mr. Cabelly or Gail Cabelly, whether individually or jointly; C/R International; or any other person or entity whose banking records the government obtained in connection with its investigation of Mr. Cabelly.

      e.     Any and all records or other evidence obtained, whether by subpoena, search warrant or some other means, from any third party, including but not limited to the following entities or persons, in connection with the government's investigation of Mr. Cabelly:

           i.     Marathon Oil, including any of its present or former directors, officers, employees or agents;

           ii.     The Scowcroft Group, including any of its present or former directors, officers, employees or agents;

           iii.     RSK Ltd., including any of its present or former directors, officers, employees or agents;

           iv.     Any travel agencies used by Mr. Cabelly, including any of their present or former directors, officers, employees or agents;

**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 4

        v.      Tom Callahan;

        vi.     Cameron Hume;

        vii.    Mike Ranneberger;

        viii.   Jason Small;

        ix.     Charlie Snyder;

        x.      Andrew Steinfeld.

      f.     The complete file held and maintained by the United States Department of Treasury, including any of its divisions or agencies, such as the Office of Foreign Asset Control ("OFAC"), concerning the application, consideration, monitoring, enforcement, and withdrawal of Mr. Cabelly's OFAC license, issued on July 11, 2006 (Indictment ¶ 7).

      g.     The complete file held and maintained by the United States Department of State, including any of its divisions or agencies, concerning the application, consideration, monitoring, enforcement, and withdrawal of Mr. Cabelly's OFAC license, issued on July 11, 2006 (Indictment ¶ 7).

      h.     The complete file held and maintained by the United States Department of Justice, including any of its divisions or agencies, such as the Foreign Agents Registration Unit, concerning the application, consideration, monitoring, and enforcement of Mr. Cabelly's registration on August 12, 2005, under the Foreign Agents Registration Act ("FARA") (Indictment ¶ 9), or any other FARA registration concerning the Government of Sudan.

      i.      Entry or visitation logs from the State Department's station in Khartoum, Sudan, reflecting any entries by Mr. Cabelly between January 2005 and September 2007.

      j.      Documents held and maintained by the United States Department of Homeland Security or any other United States department or agency that recorded Mr. Cabelly's travel to Sudan between January 2005 and September 2007, including destinations on route to Sudan.

      k.     The complete file held by the United States Department of State relating to any applications for passports submitted by Mr. Cabelly.


**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 5

      To the extent that any documents thus far withheld are not discoverable because they are statements made by prospective government witnesses, we request that those documents be provided sufficiently in advance of trial to permit their use by the defense. Such material includes, but is not limited to, grand jury transcripts, memoranda of witness interviews, agents' notes, and any recorded witness statements.

      Furthermore, once the government concludes or has strong reason to believe that it will not be calling any individual as a witness, we ask for immediate disclosure of such person's statements, including grand jury testimony or memoranda of interviews, as such material no longer can be withheld under the Jencks Act.

    2.    <u>Prior Record</u>

We understand that Mr. Cabelly has no prior criminal record.

    3.    <u>Statements</u>

      We have received summaries of statements given by Mr. Cabelly to government agents on the dates identified below:

    *November 2, 2009*

      We have received five 302s of statements made by Mr. Cabelly to FBI agents on May 7, 2007, May 12, 2008, July 1, 2008, July 9, 2008, and September 15, 2009.

    *November 4, 2009*

      We have received three reports concerning Mr. Cabelly's encounter with Customs and Border Protection (CBP) agents at Washington Dulles International Airport on October 25, 2006: a 302 dated January 1, 2007; a CBP report, dated October 25, 2006, authored by Matthew Suarez; and a CBP report dated October 25, 2006, authored by Michelle Clerkin.

      **We have not received any handwritten notes taken by agents during their questioning of Mr. Cabelly. We ask that you provide us with copies of any agents' notes under Fed. R. Crim. P. 16(a)(i)(B)(ii).**

      If the government becomes aware of any other oral statements made by Mr. Cabelly discoverable under Rule 16, please disclose the substance of those statements immediately upon


**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 6

learning of those statements. If we have not heard from you to the contrary, we will assume that Mr. Cabelly made no other discoverable statements.

4. <u>Co-conspirator statements</u>

We request disclosure of any statement of an alleged agent or coconspirator of Mr. Cabelly which the government intends to admit into evidence pursuant to FRE 801(d)(2)(D) or (E), so that the Court may determine prior to trial whether or not the statement qualifies as a co-conspirator statement. *See United States v. Slade*, 627 F.2d 293, 307 (D.C. Cir. 1980) ("The preferred practice is for the trial court to make these determinations before the hearsay evidence is admitted."); *United States v. James*, 627 F.2d 575, 580-81 (5th Cir. 1979); *United States v. Safavian*, 435 F. Supp. 2d 36, 46 (D.D.C. 2006).

5. <u>Tangible Evidence</u>

We have not received any tangible evidence except the documents, electronic media, and surveillance photographs and video described above.

6. <u>Scientific Tests</u>

We understand that the government performed no scientific examinations or tests in this case.

7. <u>Experts</u>

You have not indicated whether the government intends to call any experts to testify at trial. Should the government elect to call an expert, we request disclosures under Fed. R. Crim. P. 16(a)(1)(G).

8. <u>Evidence of Uncharged Misconduct (Rule 404(b) evidence)</u>

The government has not identified in its discovery letters any specific evidence of uncharged misconduct that it intends to introduce at trial. If our understanding is incorrect or if the government intends to introduce such evidence, please inform us in sufficient time to allow us to file any necessary pre-trial motions.

 **ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 7

    9.    <u>*Brady* Request</u>

The government's discovery letter makes no representation as to the existence of *Brady* material. *Brady* information includes all information material to guilt, punishment,[1] and the credibility of government witnesses,[2] including potential impeachment material for all government witnesses.[3] Failure to disclose impeachment evidence is the same, under *Brady*, as the failure to disclose exculpatory evidence.[4] This request includes impeachment material that may also fall under the Jencks Act.[5]

The requested evidence includes all information that you or any part of the prosecution team "know or reasonably should know tends to negate the guilt of the accused or to mitigate the offense."[6] Under *Brady* and its progeny, this request extends to all information known by all law enforcement or other government agencies involved in this case, whether or not personally known to the individual prosecutor.[7]

As is recommended by the ABA Standards, we respectfully request the material be turned over as soon as you learn of it.[8] Pre-trial disclosure of statements that qualify as both Jencks material

---

[1]     *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[2]     *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this rule.") (citations and internal quotation marks omitted).
[3]     *See United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence ... as well as exculpatory evidence falls within the *Brady* rule."); *United States v. Sudikoff*, 36 F.Supp.2d 1196, 1199-1200 (C.D. Cal. 1999) (Impeachment evidence is such that (1) bolsters the defense case, (2) potentially impeaches prosecution witnesses, or (3) is likely to lead to the discovery of admissible evidence.).
[4]     *See Bagley*, 473 U.S. at 676.
[5]     *See Boone v. United States*, 769 A.2d 811, 821 (D.C. 2001) (Although the coverage of *Brady* and the Jencks Act sometimes overlap, especially with respect to bias and impeachment material of potential government witnesses, when this overlap occurs the *Brady* rule must control and compels pre-trial disclosure.).
[6]     *See* D.C. Rules of Professional Conduct, Rule 3.8. Special Responsibilities of a Prosecutor (2000).
[7]     *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (The duty of disclosure is not limited to evidence in the actual possession of the prosecutor. Rather, it extends to evidence in the possession of the entire prosecution team, which includes investigative and other government agencies.); *see also Strickler v. Greene*, 527 U.S. 263 275, n. 12 (1999) (Prosecutor has constructive knowledge of all favorable evidence known to those acting on the government's behalf, even if no actual knowledge of materials, and even if materials are in the file of another jurisdiction's prosecutor.).
[8]     *See* ABA Standards for Criminal Justice, Prosecution Function, § 3-3.11(a) (c) (3d Ed. 1993) DISCLOSURE OF EVIDENCE BY THE PROSECUTOR ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused. ... A prosecutor should not intentionally avoid pursuit of evidence because he or she



Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 8

and *Brady* material should also be disclosed before trial to allow effective use in the preparation of the defense case.[9] We also note that under the Department's recently issued discovery policy, "[e]xculpatory material, regardless of whether the information is memorialized, must be disclosed to the defendant promptly after discovery."

Furthermore, we ask that you conduct a search for the requested materials beyond what you may consider to be the "prosecution file." We ask that you look for the requested *Brady* material within other departments and agencies of the United States government, including but not limited to, the United States' station in Khartoum, Sudan; the State Department's Bureau of African Affairs and Office of the Special Envoy to Sudan; the Treasury Department's Office of Foreign Asset Control; and the Department of Justice's Foreign Agents Registration Unit.

We make the following specific *Brady* requests.

a. Any statement, whether embodied in memoranda, notes or transcripts, from any witness relating to Mr. Cabelly's understanding of the Sudanese Sanctions Regulations and their licensing requirements. Specifically, we seek disclosure of any such statement that reflects a belief by Mr. Cabelly that the acts described in the indictment were not unlawful or did not require an OFAC license. In particular, we seek disclosure of any statement (or any other evidence in the government's possession) that would tend to show that Mr. Cabelly believed or was informed that actions performed on behalf of the Government of the Sudan were not unlawful unless they were remunerated.

b. Any statement, whether embodied in memoranda, notes or transcripts, from any witness relating to any conversation between Mr. Cabelly and the witness concerning the Sudanese Sanctions Regulations and their licensing requirements. Specifically, we seek disclosure of any such statement that reflects a belief by Mr. Cabelly that the acts described in the indictment were not unlawful or did not require an OFAC license or were not unlawful unless done in exchange for payment.

c. Any statement, whether embodied in memoranda, notes or transcripts, from any witness relating to any assistance that Mr. Cabelly provided to the United States in connection with its relations with the Government of Sudan while Mr. Cabelly was a private citizen, but particularly during the time period from January 2005 to September 2007. Such assistance includes, but is not limited to, arranging meetings between United States

---

believes it will damage the prosecution's case or aid the accused.").
[9]   See *Boone v. United States*, 769 A.2d 811, 821 (D.C. 2001).



**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 9

government officials and Sudanese governmental officials; providing advice or opinions to United States officials concerning United States-Sudan relations; and, passing information to officials of the government of Sudan at the request of an official of the United States.

      d.      Any document, including but not limited to memoranda, electronic mail, telexes, and correspondence, whether classified or unclassified, that reflect any assistance that Mr. Cabelly provided to the United States in connection with its relations with the Government of Sudan while Mr. Cabelly was a private citizen, but particularly during the time period from January 2005 to September 2007. Such assistance would include, but is not limited to, arranging meetings between United States government officials and Sudanese governmental officials; advice or opinions provided by Mr. Cabelly concerning United States-Sudan relations; and, passing of information to officials of the government of Sudan at the request of an official of the United States.

      e.      Any document establishing or tending to establish that Mr. Cabelly served as a "back channel" for the United States to the Government of Sudan. This includes any document reflecting or considering such a role for Mr. Cabelly by any employee of the Department of State or any other department or agency of the United States, even if the government believes that this role was opposed, or not approved, by the "proper" channels. For example, if certain employees in the Department of State favored opening a dialogue with the Government of Sudan with Mr. Cabelly playing a role in the process and others in the United States Government, including but not limited to Undersecretary of State Jendayi Frazier, opposed such a move, any materials reflecting this dynamic would be covered by this request.

      f.      Any statement, whether embodied in memoranda, notes or transcripts, of any United States government official reflecting knowledge or an understanding that Mr. Cabelly worked on behalf of Total relating to Block B and other issues in Sudan during the time period from January 2005 to September 2007.

      g.      Any document, including but not limited to memoranda, electronic mail, telexes, and correspondence, reflecting the knowledge or an understanding of any United States government official that Mr. Cabelly worked on behalf of Total relating to Block B and other issues in Sudan during the time period from January 2005 to September 2007.

      h.      Any statement, whether embodied in memoranda, notes or transcripts, of any United States government official reflecting knowledge or an understanding that Mr. Cabelly was involved in discussions concerning investment by a UAE investor in oil blocks in Sudan during the time period from January 2005 to September 2007.



**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 10

    i.    Any document, including but not limited to memoranda, electronic mail, telexes, and correspondence, reflecting the knowledge or an understanding of any United States government official that Mr. Cabelly was involved in discussions concerning investment by a UAE investor in oil blocks in Sudan during the time period from January 2005 to September 2007.

    j.    Any statement, whether embodied in memoranda, notes or transcripts, of any United States government official reflecting knowledge or an understanding that Mr. Cabelly provided alleged "consulting services," *see, e.g.,* Indictment ¶¶ 21(34) – (36), to the Government of Sudan during the time period from January 2005 to September 2007.

    k.    Any document, including but not limited to memoranda, electronic mail, telexes, and correspondence, reflecting the knowledge or an understanding of any United States government official that Mr. Cabelly provided alleged "consulting services," *see, e.g.,* Indictment ¶¶ 21(34) – (36), to the Government of Sudan during the time period from January 2005 to September 2007.

    l.    Any statement, whether embodied in memoranda, notes or transcripts, of any United States government official reflecting knowledge or an understanding that Mr. Cabelly was involved in discussions concerning the acquisition of aircraft for Sudan Airways during the time period from January 2005 to September 2007.

    m.    Any document, including but not limited to memoranda, electronic mail, telexes, and correspondence, reflecting the knowledge or an understanding of any United States government official that Mr. Cabelly was involved in discussions concerning the acquisition of aircraft for Sudan Airways during the time period from January 2005 to September 2007.

    n.    Any statement, whether embodied in memoranda, notes or transcripts, of any United States government official reflecting knowledge or an understanding that Mr. Cabelly was involved in any discussions concerning any commercial transactions involving Sudan, or any agency, department or instrumentality thereof, not alleged in the indictment during the time period from January 2005 to September 2007.

    o.    Any document, including but not limited to memoranda, electronic mail, telexes, and correspondence, reflecting knowledge or an understanding that Mr. Cabelly was involved in any discussions concerning any commercial transactions involving Sudan, or any agency, department or instrumentality thereof, not alleged in the indictment during the time period from January 2005 to September 2007.



Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 11

  p. Any documents establishing or tending to establish the knowledge of the United States government of Mr. Cabelly's travels to Sudan.

  q. Any evidence establishing or tending to establish that the source of any cash recovered from Mr. Cabelly's home or office was from a source other than Sudan.

  r. Any evidence establishing or tending to establish that any cash seized from Mr. Cabelly at Dulles Airport on October 25, 2006, was from a source other than Sudan.

  s. Any evidence establishing or tending to establish that the cash seized from Mr. Cabelly at Dulles Airport on October 25, 2006, was intended for use for medical expenses for Gwyneth Todd.

  t. Any evidence establishing or tending to establish the alleged unindicted co-conspirators did not know that Mr. Cabelly's activities described in the indictment required a license from OFAC or were outside the scope of the license issued by OFAC.

In addition to the foregoing specific requests, we make the following general demands for recognized *Brady* material:

*Information regarding government witnesses.*

- **Agreements/Deals with government witnesses**. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to disclose promise of immunity in exchange for testimony violates *Brady*); *United States v. Bagley*, 473 U.S. 667, 676, 682 (1985) (failure to disclose payment of $300 to two key government witnesses violates *Brady*); *Singh v. Prunty*, 142 F.3d 1157, 1161-63 (9th Cir. 1998) (failure to disclose that star witness had a very favorable deal with government to avoid very serious charge is *Brady* violation); *United States v. Smith*, 77 F.3d 511, 513-16 (D.C. Cir. 1996) (failure to disclose deal in which state charges dismissed as part of federal plea is *Brady* violation); *In Re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 891, 896 (D.C. Cir. 1999) (remand to determine Brady information with instruction to district court to require the U.S. Attorney's office to review the records in the possession of the prosecution team for evidence indicating that a government informant who provided information leading to the defendant's arrest had a deal with the prosecution).

- **Payments to witnesses**: *See, e.g., Mastracchio v. Vose*, 274 F.3d 590, 602-03 (1st Cir. 2001) (knowledge of witness payments or favors made by the Witness Protection team is *Brady*); *In*


**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 12

*re Sealed Case (Brady Obligations)*, 185 F.3d 887, 894 (D.C. Cir. 1999) (failure to disclose cooperation agreement that included payments to witness is *Brady* information).

- **Criminal history of informants**: *See, e.g., Crivens v. Roth*, 172 F.3d 991, 996-99 (7th Cir. 1999) (failure to disclose crimes committed by government witness is *Brady* even when government witness used aliases); *Carriger v. Stewart*, 132 F.3d 463, 480-82 (9th Cir. 1997) (failure to obtain or disclose Department of Corrections file that would have showed lengthy criminal history, and history of lying to police and blaming others for his own crimes is *Brady*).

- **Bias of government witnesses**: *See, e.g., Schledwitz v. United States*, 169 F.3d 1003, 1014-15 (6th Cir. 1999) (*Brady* obligation for government to reveal witness portrayed as neutral and disinterested expert actually had been investigating defendant for years); *United States v. O'Connor*, 64 F.3d 355, 359-60 (8th Cir. 1995) (failure to disclose threats by one government witness against another and attempts by that same government witness to influence testimony of another government witness is *Brady*); *Reutter v. Solem*, 888 F.2d 578, 581-82 (8th Cir. 1989) (failure to inform defense that key witness had applied for commutation and was scheduled to appear before parole board in a few days was *Brady* violation).

- **Personnel files, especially of testifying agents**: *See, e.g., United States v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992) (if specific request is made, prosecutor must search personnel records of police officer/witnesses to fulfill *Brady* obligations); *United States v. Muse*, 708 F.2d 513, 516 (10th Cir. 1983) (recognizing that prosecutor must produce *Brady* material in personnel files of government agents even if they are in possession of another agency.).

- **Presentence Reports of Testifying Witnesses**: *See, e.g., United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988) (information in probation file relevant to government witness credibility must be disclosed, and could not be deemed privileged by making it part of probation file); *United States v. Carreon*, 11 F.3d 1225, 1238 (5th Cir. 1994) (prosecution should allow trial court to conduct in camera review of presentence reports of government witnesses to determine whether they contain *Brady/Giglio* material).

- **Misconduct by Government Witnesses**: *See, e.g., United States v. Boyd*, 55 F.3d 239, 243-45 (7th Cir. 1995) (failure to disclose drug use and dealing by prosecution witness, and "continuous stream of unlawful favors" including phone privileges, presents, special visitors, provided by prosecution to witnesses considered *Brady* material).


**ZUCKERMAN SPAEDER LLP**

Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 13

- **Perjury in Motions hearings**: *See, e.g., United States v. Cuffie*, 80 F.3d 514, 517-19 (D.C. Cir. 1996) (failure to disclose perjury by police officer during motion to seal proceeding considered material *Brady* evidence relevant to impeachment).

- **Knowledge of intimidation of witnesses**: *See, e.g., Guerra v. Johnson*, 90 F.3d 1075, 1078-80 (5th Cir. 1996) (failure to disclose police intimidation of key witnesses and information regarding suspect seen carrying murder weapon minutes after shooting considered *Brady*).

*Inconsistent statements.*

- **Contradictory or inconsistent statements**: *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963) (failure to turn over statement by co-defendant that he had planned the killing, and that co-defendant had performed actual killing is violation of due process); *Kyles v. Whitley*, 514 U.S. 419 (1995) (failure to disclose inconsistent eyewitness and informant statements, and list of license numbers compiled by police that did not show Kyles' car in supermarket parking lot).

- **Inconsistent notes**: Prosecutor and law enforcement notes from interviews with government witness: *See, e.g., United States v. Service Deli, Inc.*, 151 F.3d 938, 943-44 (9th Cir. 1998) (*Brady* obligation to turn over original notes from witness interview that contained three key pieces of impeachment information that showed the story had changed, the change may have been brought about by threats of imprisonment, and witness had claimed to have suffered a stroke); *United States v. Pelullo*, 105 F.3d 117, 122-23 (3d Cir. 1997) (failure to disclose rough notes of FBI and IRS agents corroborating defendant's version of events and impeaching testimony of government agents).

- **Statements of potential witnesses not called to testify**: *See, e.g., United States v. Frost*, 125 F.3d 346, 383-84 (6th Cir. 1997) (*Brady* violation when government does not disclose statement of potentially exculpatory witness, but instead tells defense that that witness would provide inculpatory information if called to testify).

- **Expert reports inconsistent with the government case or tends to support the defense case**: *See, e.g., Ex Parte Mowbray*, 943 S.W.2d 461, 466 (Tex. Crim. App. 1996) (*Brady* violation when State failed to disclose exculpatory expert report); *United States v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985) (*Brady* violation when government failed to disclose ballistics worksheet that showed gun defendant was accused of firing was inoperable); *State v. DelReal*, 593 N.W. 2d 461, 464, 466 (Wis. App. 1999) (*Brady* violation when government failed to disclose fact that a swab for gunshot residue had taken place, which would have



Michael DiLorenzo
Patrick Murphy
January 19, 2010
Page 14

> provided defendant the opportunity to have swabs tested and also would have allowed defendant to challenge reliability/credibility of police investigation and testimony).

- **Mitigating evidence in aid of sentencing**: *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963); ABA Standards for Criminal Justice, Prosecution Function, § 3-6.2 (b) (3d Ed. 1993) Information Relevant to Sentencing ("The prosecutor should disclose to the defense and to the court at or prior to the sentencing all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.").

### Conclusion

It is our belief that the requested material is discoverable under the Federal Rules of Criminal Procedure and/or under pertinent case law. In the event that you are unable or unwilling to provide the requested information, or if you disagree with any of the foregoing representations, please advise me us by February 5, 2010, so that we might respond appropriately.

Sincerely,

Aitan D. Goelman
Amit P. Mehta
Jason M. Knott

APM:gbh